

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

August 2, 1994

Honorable David Motley
Kerr County Attorney
Kerr County Courthouse
700 East Main Street
Kerrville, Texas 78028-5324

Opinion No. DM-298

Re: Whether, under section 71.04(e) of the Family Code, a clerk of court may charge an applicant for a protective order more than $36 in certain cases and related question (RQ-559)

Dear Mr. Motley:

You have asked us whether, under section 71.04(e) of the Family Code, a clerk of court may charge an applicant for a protective order in cases of family violence[1] more than $36 if more than one person requires service or if service of notice of an application for a protective order is attempted but not completed. You also have asked us whether, under Texas Rule of Civil Procedure 145, an applicant for protective order who currently receives a government entitlement based on indigency must specify in an affidavit other income and assets available to the applicant. We will answer your questions in the order you asked them.

The legislature originally enacted title 4 of the Family Code, of which chapter 71 is a part, in 1979 in an effort to address the problem of family violence. *See* Alexander, *supra* note 1, at 1863. Chapter 71 pertains specifically to protective orders. Pursuant to section 71.02 of the Family Code, a person commences a proceeding under chapter 71 by

---

[1]Section 71.01(b)(2) of the Family Code defines "family violence" as:

> (A) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, or assault, or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, or assault, excluding the reasonable discipline of a child by a person having that duty; or

> (B) abuse, as that term is defined by Sections 34.102(1)(C), (E), and (G) of this code, by a member of a family or household toward a child of the family or household. [Footnote omitted.]

For purposes of chapter 71, the term "family" "includes individuals related by consanguinity or affinity, as determined under Article 5996h, Revised Statutes, individuals who are former spouses of each other, individuals who are the biological parents of the same child, without regard to marriage, and a foster child and foster parent, whether or not those individuals reside together." Fam. Code § 71.01(b)(3). The term "household" "means a unit composed of persons living together in the same dwelling, whether or not they are related to each other." *Id.* § 71.01(b)(5). The term "member of a household" "includes a former member of a household," *i.e.*, "a person who previously lived in the household." *Id.* § 71.01(b)(4), (6). *See generally* Alexander, *Title 4. Protection of the Family*, 21 TEX. TECH. L. REV. 1863, 1864-66 (1990).

filing with the appropriate clerk of court an application for a protective order. *See* Fam. Code §§ 71.03 - .05 (providing for venue, persons qualified to file application, and contents of application). Section 71.04(e), about which you specifically ask, provides for fees related to the filing and service of an application for protective order. It states as follows:

> The fee for filing an application is $16 and is to be paid to the clerk of the court in which the application is filed. Except as provided in Section 71.07 of this code, the applicant may not be assessed any other fees, costs, charges, or expenses by the clerk of the court or any other public official in connection with the application. *The total fees relating to the filing of and service of notice of an application for a protective order, including fees under Section 71.07 of this code, may not exceed $36 under any circumstances.* An applicant who is unable to pay the filing fee and other costs as provided in Section 71.07 of this code may file with the court an affidavit of inability to pay under the procedures, to the extent that they apply, provided by the Texas Rules of Civil Procedure. [Emphasis added.]

Section 71.07, to which section 71.04(e) refers, provides in pertinent part as follows:

> (a) Each individual who is alleged to have committed family violence is entitled to service of notice of an application for a protective order as provided by this section on the filing of an application.
>
> . . . .
>
> (f) A party filing an application for a protective order shall furnish the clerk with a sufficient number of copies of the application for service of those individuals alleged in the application to have committed family violence.
>
> (g) A notice of an application for a protective order shall be served in the same manner as a citation under the Texas Rules of Civil Procedure, except that service by publication is not authorized.
>
> . . . .
>
> (i) The fee for service of notice of an application for a protective order charged to the applicant under this section may not be more than:
>
>> (1) $20 if the notice is delivered in person; or
>>
>> (2) the cost of postage if the service is by registered or certified mail.

Section 71.04(e) limits the total fees a clerk may charge an applicant for a protective order to $36. This is equivalent to the amount section 71.04(e) requires a clerk to charge for filing the application ($16) plus the fee section 71.07(i) authorizes a clerk to charge for service of notice of an application for protective order ($20). However, as you suggest, in drafting section 71.07 the legislature contemplated that, upon occasion, multiple services or multiple attempted services must be made. For example, an applicant may allege that more than one individual has committed family violence, and in such a situation, section 71.07(a) entitles each such individual to service of notice of an application for protective order. Additionally, section 71.07(b) requires the clerk to have the notice served in the manner the applicant directs, which may be one of two methods rule 106(a) of the Texas Rules of Civil Procedure authorizes: by delivering a copy of the application to the respondent in person, or by mailing a copy of the application to the respondent by registered or certified mail, return receipt requested. If the applicant requests that the clerk have the notice served upon the respondent in person, the server may need to make multiple attempts to serve the notice.[2] In either situation, section 71.04(e) appears to mandate that the clerk charge only $20 for service, regardless of the number of respondents served or number of times service must be attempted. You ask us, therefore, to resolve the inconsistency you perceive between section 71.04(e) and section 71.07 of the Family Code.

The legislature designed title 4 of the Family Code in part to provide protective orders to persons who are poor. Alexander, *supra* note 1, at 1869. In 1979, when the legislature originally enacted section 71.04(d) (renumbered as subsection (e) in 1989, *see* Acts 1989, 71st Leg., ch. 614, § 2, at 2014-15), it specified a nominal filing fee of $16 but did not limit the amount a clerk could assess for service of notice of the application for protective order,[3] although section 71.07(a) mandated that each respondent was entitled

---

[2]You also claim that an extension or rescheduling of the hearing on the application for protective order requires additional service on the respondent or respondents. Section 71.09 of the Family Code provides for two situations in which a court may reschedule a hearing on the application for protective order. First, section 71.09(b) requires a court to reschedule a hearing if a person entitled to service of a notice of application for protective order receives the service less than 48 hours prior to the start of the scheduled hearing and the person requests the court to reschedule the hearing. In that event, section 71.09(b) specifies that the person is not entitled to additional service for the rescheduled hearing, presumably because the person would be present before the court to request rescheduling and thus would receive actual notice of the new date and time of the hearing. *See* Alexander, *supra* note 1, at 1876.

Second, section 71.09(c) authorizes a court to reschedule a hearing if a party actually fails to receive notice of the application for protective order. In such a case, however, the server may have attempted service upon the respondent but not succeeded. Therefore, this situation is the same as the other situation you describe, in which the server must make multiple attempts to serve the notice upon the respondent.

[3]As originally enacted, section 71.04(d) provided that "[t]he fee for filing an application is $16 and is to be paid to the clerk of the court in which the application is filed." *See* Acts 1979, 66th Leg., ch. 98, § 11, at 185.

to service.[4] *See* Acts 1979, 66th Leg., ch. 98, § 11, at 185. Clerks therefore charged court costs and service fees in addition to the $16 filing fee, raising the total fee to a level so high that many eligible persons could not afford to apply for protective orders. Alexander, *supra* note 1, at 1869. In 1987 the legislature amended section 71.04(d) to prohibit a clerk from assessing in connection with the application any fees, costs, charges, or expenses, other than the fee for service of the notice that section 71.07 authorizes.[5] *See* Acts 1987, 70th Leg., ch. 1090, § 1, at 3700; *see also* Alexander, *supra* note 1, at 1869.

In 1991, by the enactment of Senate Bill 1149, the legislature added the present third sentence to section 71.04(e): "The total fees relating to the filing of and service of notice of an application for a protective order, including fees under Section 71.07 of this code, may not exceed $36 under any circumstances." On its face, this sentence clearly prohibits a clerk from assessing a total fee larger than $36 *under any circumstances*. The legislative history does not show any contrary intent. In hearings on Senate Bill 1149, the author, Senator Brooks, underlined the plain language of the amendment by stating that the purpose of the amendment was to "clarify the previous legislative intent that the filing fee [for an application] for protective order shall not exceed $16 *and the fee for service shall not exceed $20* under any circumstances." Hearings on S.B. 1149 Before the Senate Comm. on Health & Human Services, 72d Leg. (Apr. 16, 1991) (statement of Senator Brooks, author) (tape available from Senate Staff Services) (emphasis added). Consequently, we construe section 71.04(e) to absolutely prohibit a clerk from charging an applicant for protective order under chapter 71 of the Family Code more than $36, regardless of the number of respondents who must be served or the number of times service must be attempted before the server actually delivers the service.

Your second question concerns affidavits of inability to pay costs. As quoted above, section 71.04(e) permits "[a]n applicant who is unable to pay the filing fee and other costs as provided in Section 71.07 of this code [to] file with the court an affidavit of inability to pay under the procedures, to the extent that they apply, provided by the Texas

---

[4]As originally enacted, section 71.07(a) provided that "[e]ach individual, other than an applicant, who is alleged to have committed family violence is entitled to service of citation on the filing of an application." *See id.*

[5]In 1987 the legislature amended section 71.04(d) of the Family Code to provide in pertinent part as follows (italics indicate language the legislature added in 1987):

> The fee for filing an application is $16 and is to be paid to the clerk of the court in which the application is filed. *Except as provided in Section 71.07 of this code, the applicant may not be assessed any other fees, costs, charges, or expenses by the clerk of the court or any other public official in connection with the application.*

*See* Acts 1987, 70th Leg., ch. 1090, § 1, at 3700. By the same bill, the legislature added to section 71.07 of the Family Code subsection (c), which read essentially as section 71.07(i) does currently. See discussion *supra* page 2 (quoting Fam. Code § 71.07(i)).

Rules of Civil Procedure." Rule 145 of the Texas Rules of Civil Procedure provides in pertinent part as follows:

> In lieu of filing security for costs of an original action, a party who is unable to afford said costs shall file an affidavit as herein described. A "party who is unable to afford costs" is defined as a person who is presently receiving a governmental entitlement based on indigency or any other person who has no ability to pay costs. Said affidavit, and the party's action, shall be processed by the clerk in the manner prescribed by this rule.
>
> . . . .
>
> 2. Affidavit. The affidavit shall contain complete information as to the party's identity, nature and amount of governmental entitlement income, nature and amount of employment income, other income (interest, dividends, etc.), spouse's income if available to the party, property owned (other than homestead), cash or checking account, dependents, debts, and monthly expenses.

You contend that, because rule 145 defines a "party who is unable to afford costs" as a person who is presently receiving a government entitlement based on indigency, an applicant for protective order who is filing an affidavit of inability to pay under section 71.04(e) of the Family Code need only state in the affidavit his or her identity and the fact that he or she is receiving a government entitlement based on indigency. You believe that the remainder of the information specified in rule 145 is "wholly unnecessary." We are uncertain whether, by the phrase "wholly unnecessary," you mean not required or irrelevant. Because rule 145 explicitly requires an affiant to provide complete information regarding each of the items listed in paragraph 2 of the rule (thus making such information necessary), we need not determine here whether the information specified in paragraph 2, other than a statement that the affiant is the recipient of a government entitlement based on indigency, is relevant to determining whether such a person is unable to afford the costs of an original action.[6] Cf. Cronen v. Smith, 812 S.W.2d 69, 75 (Tex. App.--Houston [1st Dist.] 1991, no writ) (Mirabal, J., dissenting) (affiant receiving government entitlement based on indigency is as matter of law "party who is unable to afford costs" within context of rule 145).

---

[6]You do not ask, and therefore we do not consider, the consequences, if any, of filing an affidavit under rule 145 of the Texas Rules of Civil Procedure in which the affiant fails fully to state his or her financial condition as required by the rule.

## S U M M A R Y

Pursuant to section 71.04(e) of the Family Code, a clerk must not charge an applicant for a protective order under chapter 71 of the Family Code more than $36 total for filing the application and serving notice of the application, regardless of the number of respondents who must be served or the number of times service must be attempted before the server actually delivers the service. Although an applicant for protective order is presently receiving a governmental entitlement based on indigency, the applicant must, if he or she claims to be unable to pay the filing fee and other costs as provided in section 71.07 of the Family Code, file with the clerk an affidavit of inability to pay in which the applicant provides information regarding all items paragraph two of Texas Rule of Civil Procedure 145 specifies.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

DREW DURHAM
Deputy Attorney General for Criminal Justice

JAVIER AGUILAR
Special Assistant Attorney General

RENEA HICKS
State Solicitor

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General